[Civ. No. 18228.   First Dist., Div. One.   Oct. 13, 1959.]

D. A. PARRISH AND SONS (a Corporation), Plaintiff and Respondent, v. COUNTY SANITATION DISTRICT NUMBER 4 OF SANTA CLARA COUNTY, Appellant; B. MILES THOMAS COMPANY (a Corporation) et al., Defendants and Respondents.

408

David H. Adams for Appellant.

Forrest E. Macomber and Gordon J. Aulik for Plaintiff and Respondent.

Samuel C. Shenk and Ephraim Adams for Defendants and Respondents.

TOBRINER, J.—We find no merit in appellant's claim of error in the trial court's award to a contractor of damages for breach of contract covering installation of sewer pipe, upon any of the three suggested grounds: that the evidence does not support the judgment, that two subcontractors should not have been joined as plaintiffs, and that the findings and judgment should have been in the form urged by appellant.

The case arises from breach of contract. Respondent contracted to install main and lateral sewer pipe; appellant in turn promised to provide rights of way upon which the work was to be done. Indeed the standard practice in the industry is that easements be ready when a contractor is to lay pipe. Finding in the latter part of September, 1952, that matters beyond its control would prevent its meeting its deadline, respondent subcontracted, upon the written consent of appellant, portions of the job to Bryan B. Wall and B. Miles Thomas Company. On January 29, 1953, appellant's chief project engineer reported to its board of directors that respondent had diligently and satisfactorily prosecuted the work.

After a trial without a jury the court found appellant failed to perform its obligation to provide rights of way prerequisite to the performance of respondent's work, and, as a result of that failure, granted respondent D. A. Parrish and

Sons a judgment of $40,323.49 against appellant; Bryan B. Wall, a judgment of $4,080.22 against respondent; and B. Miles Thomas Company, a judgment of $3,304.67 against respondent. The court provided that the latter two judgments be conditional upon respondent's collecting its judgment from appellant.

We consider each of appellant's triple grounds of appeal under separate headings:

1. *The sufficiency of the evidence.*

Appellant urges five contentions in this respect: (1) the contract did not require appellant to provide easements; (2) appellant did not in any event breach such a duty, even if it existed; (3) respondent proved no damages; (4) respondent failed to give the notices required by the contract as to any claims for damages; and (5) appellant did not wrongfully deduct engineering or inspection fees. We proceed to point out why appellant's contentions cannot be upheld.

*First. Was appellant's duty to provide easements sufficiently established?* As we have stated, both appellant's contract and the standard practice in the industry so provided. Although the contract did not specify the precise time appellant was to have the rights of way ready, Civil Code, section 1657, cited by appellant, establishes that if the time of performance is not specified in a contract, the courts will imply a reasonable time. A reasonable time must be determined by "the situation of the parties, the nature of the transaction and the circumstances of the particular case. . . ." (*Kersch* v. *Taber* (1945), 67 Cal.App.2d 499, 506 [154 P.2d 934].) Moreover, the contract carried a deadline of 120 days for completion of the job. Therefore, the court properly found that appellant faced the obligation of promptly obtaining easements in order that Parrish could expeditiously lay pipe.

*Second. Did appellant breach its duty?* Appellant analyzes in detail each item of damage found for the three respondents, and we are therefore compelled to a factual analysis to dispose of a plea that in substance asks this appellate court to retry the case.

*Parrish Claim Number 1.* (City Park-Raisch Easement.)

Because it was the most difficult portion of the job, respondent informed appellant that respondent would first

start work here. After obtaining permission of appellant's engineer, respondent began benching operations, consisting of leveling the land for staking out the line for pipe, in the City Park area of the job. When appellant demanded wider benching than was originally undertaken, respondent sent out a bulldozer, only to be then told by appellant to cease operations totally because the city of Los Gatos objected.

When respondent found itself unable to do the work in City Park, which is the lower part of the canyon, it attempted to work the Raisch property and moved some equipment to this location. Upon commencing operations, respondent notified Raisch Company that the road used by its trucks was about to be cut. Immediately thereafter appellant's engineers ordered respondent to cease operations on the company's property.

Some two months later appellant cleared the easement across the property but directed respondent not to proceed for over one month because of the possibility of establishing a cheaper alternate route. When appellant finally told respondent to proceed on the City Park job, it was raining. The rain, besides slowing down construction, required respondent to use rock in the trench bottoms to stabilize the base for laying the pipe.

Respondent claimed damages of $28,179.79, attributable to this fiasco. Respondent adduced testimony as to damages based upon actual extra labor costs, equipment standing idle, supervision and overhead, plus inspection and engineering fees withheld by appellant.

Appellant merely reargues the evidence. It also alleges that the Health and Safety Code, section 4759, gave appellant a right of way across any public property, i.e., City Park of Los Gatos. However, appellant thus does no more than establish a conflict in the evidence since appellant was coincidentally negotiating with Los Gatos for an easement and respondent had actually been ordered from the park property. The point adds nothing to appellant's position.

*Parrish Claim Number 2.*

■ Prior to starting work on San Tomas Road, respondent had obtained maps from the San Jose Water Works, but these maps did not indicate that there was a water main in the center of the street; nor did the engineering plans furnished by appellant indicate this pipe.

Upon digging along the center of San Tomas Road respondent hit the water main. Appellant's inspector then told respondent to halt operations; appellant's engineers informed respondent that a new course would have to be laid out, and meanwhile ordered respondent to move to another location to enable appellant to obtain an easement along the side of the road. From San Tomas Road respondent moved to Bruce Street, approximately one block away. Claim Number 2, for $426.77, was limited to the expenses incident to making this extra move. Ample testimony supported the costs involved in making such a move.

Appellant argues that the contract provided that the "Contractor shall notify the utility companies before proceeding with construction and should familiarize himself with the location of underground pipes, ducts or manholes. The location of the utilities where shown on the plans are approximate only and are not to be taken as final," and hence no allowance should be made for the move by Parrish. Appellant's claim is refuted by (1) the fact that appellant's engineers established the line and depth respondent was to dig, (2) the order of the engineers to respondent to move while they acquired a new easement, and (3) the theory explained in the summation of the trial judge: "I certainly have great difficulty accepting a theory . . . that an engineer can lay out a course for the contractor to follow. [And if i]t turns out through the ignorance of the engineer . . . this course has been laid out directly over some water lines . . . that . . . you [are] going to blame the contractor for hitting those pipes? The blame is in the man who laid out the course."

*Parrish Claim Number 3.*

Appellant's only contention is that since the move out of the job in Claim Number 2 should not have been allowed, the move back should likewise have been rejected. As indicated, the move out was properly charged to appellant.

*Parrish Claims Numbers 4-9; Thomas Claims Numbers 1-3.*

The Parrish claims involve damages found because of moves necessitated by appellant's failure to obtain easements prerequisite to respondent's performance of the work, with the exception of Claim Number 8 which involved damages for standby resulting from appellant's supplying respondent with erroneous cut sheets.

Thomas Claim Number 1 involved damages emanating from incorrect instructions and cut sheets of appellant's inspectors and engineers. Thomas Claim Number 2 again arose out of delay in obtaining a necessary easement. Appellant concedes Thomas Claim Number 3 is valid if the first claim stands.

Appellant again reargues the testimony; unquestionably, however, the judgment is supported by substantial evidence.

*Wall's Claims Numbers 1-6.*

These claims all arise from delays caused by failure of appellant to have obtained the required easements. Appellant again reargues the evidence; the evidence substantially supports the judgment.

*Third. Did Parrish and the two subcontractors prove their damages?* Appellant's claim as to failure of Parrish, Wall and Thomas to prove damages is clearly refuted by the evidence to which we have referred *supra.* ■ Appellant's present objection that testimony was improperly admitted as to Parrish Claim Number 3 falls in the void of the absence of such objection at the trial level.

■ *Fourth. Was Parrish required to give notice of any claims for damages within 10 days after discovering the basis therefor and if so was this condition satisfied?* The contract provision upon which appellant relies for this forfeiture claim provides: "57. *Extra, Additional or Omitted Work—Payment* . . . If the Contractor shall claim that any instruction, request, drawing, specification, action, condition, *omission, default,* or other situation obligated or may obligate the Owner to pay additional compensation . . . , he shall notify the Owner in writing of such claim within ten (10) days from the date he has actual or constructive notice of the factual basis supporting the claim. The Contractor's failure to notify the Owner within such ten (10) day period shall be deemed a waiver and relinquishment of any such claim against the Owner." (Emphasis added.)

This clause refers to additional or extra work, not to damages incurred by appellant's frustration of respondent's ability to perform the prescribed work.

*United States* ex rel. *Baltimore Brick Co.* v. *John A. Johnson & Sons* (1945), 65 F.Supp. 514, thus construes a somewhat similar clause. The court stated: "Article VIII provides: 'The party of the second part shall make no claim for

additional work unless the same shall be done in pursuance of written order from the party of the first part, and *notice of all such claims shall be made* to the party of the first part *in writing before the next ensuing payment, or shall be considered as abandoned* by the party of the second part.' However, we do not think that this provision is intended to include, as 'additional work,' money expended in material and wages because of the general contractor's failure to construct temporary roads which he . . . was required to do. We feel that this provision . . . intends to refer to what would normally be treated as additional or extra work, as, for example, an enlargement or other change in some of the specifications thereby increasing the cost, and not to something which is already expressly covered by an obligation imposed upon one or the other party.'' (P. 527; emphasis added.)

■ Moreover, a forfeiture clause, such as this, will not only be strictly construed (*Milovich* v. *City of Los Angeles* (1941), 42 Cal.App.2d 364, 373 [108 P.2d 960]) but has been interpreted by this court not to apply to claims arising from breaches of the contract caused by the other party. In *McGuire & Hester* v. *City etc. of San Francisco* (1952), 113 Cal.App.2d 186 [247 P.2d 934], the facts paralleled the instant ones to the extent that defendant had also failed to secure easements preliminarily required for plaintiff's performance of his work. Defendant claimed that it could not be held liable in damages because the contract provided that '' '[a]part from granting the Contractor extensions of time for unavoidable delays, *no payment* or allowance of any kind shall be made to the Contractor *by way of compensation or damages on account of any hindrance or delay from any cause* in the progress of the work or any portion thereof, *whether such delay be avoidable or unavoidable.*' '' (P. 189.) In an opinion by Justice Bray, this court held that the phrase ''from any cause'' did not include breaches of contract by the defendant.

■ *Fifth. Was the evidence sufficient for the trial court to conclude that appellant had wrongfully deducted engineering and inspection fees?* The contract allowed appellant to withhold extra inspection and engineering fees which were incurred by appellant as the result of granting respondent extensions of time. Appellant claims that its own breach of contract in failing to provide easements gave respondent an excuse for nonperformance without requesting an extension

of time. But, since respondent *did* request, and obtained, extensions of time, respondent must pay these additional charges. We cannot adopt this tortuous self-serving reasoning.

2. *The issues as to respondent's two subcontractors.*

We probe each of appellant's four subordinate points but do not find them meritorious.

██ *First. Was the court correct in ordering plaintiff's two subcontractors to be joined?* Code of Civil Procedure, section 389, provides: "[W]hen a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in. . . ." Pursuant to this provision the Supreme Court has stated that "[t]he court may, of course, order proper parties to be brought in if expedient for a complete determination of the controversy." (*Miller* v. *McKinnon* (1942), 20 Cal.2d 83, 99 [124 P.2d 34, 140 A.L.R. 570].)

Parrish claimed damages against appellant on the theory that appellant's breach of contract resulted in Parrish incurring liability to its subcontractors. Therefore, Wall and Thomas were certainly proper parties, since to the extent respondent was liable to them, appellant was liable to respondent. Moreover, as the trial court indicated, the joining of the subcontractors and determination of their damages in this action avoided collusion between the contractor and its subcontractors.

Appellant's reliance on *Ambassador Petroleum Co.* v. *Superior Court* (1930), 208 Cal. 667 [284 P. 445]; *Hahn* v. *Walter* (1943), 60 Cal.App.2d 837 [141 P.2d 925]; and *Goldsworthy* v. *Dobbins* (1952), 110 Cal.App.2d 802 [243 P.2d 883], is misplaced. These cases deal with a situation in which a court may proceed without a party, or may properly refuse to join a party, not with the situation in which a court may order a party joined.

██ *Second. Did respondent's amendment to its first amended complaint state a cause of action against appellant?* Two cases illustrate the validity of inclusion in the complaint of the subcontractor's claims against respondent. *Wiseman* v. *Sklar* (1930), 104 Cal.App. 369 [285 P. 1081], involved a situation in which one Kass contracted with defendants to construct a home. Without the knowledge of defendants, Kass assigned the contract to Wiseman. Upon defendants' failure to pay the full contract price, Wiseman sued defendants for

the balance; at this point the trial judge ordered Kass brought in. The court found that defendants owed the balance, entered judgment for Kass against the defendants, granted judgment against Kass for Wiseman in the same amount, and further provided that Kass assign his judgment to Wiseman. In affirming the judgment, the appellate court held: ". . . Kass was at all times responsible to defendants under the contract. If Kass was responsible to defendants, then it must necessarily follow that defendants were responsible to said Kass (or his assignee) under the contract." (Pp. 374-375.)

In *J. Harry McNally, Inc.* v. *State* (1939), 170 Misc. 914 [11 N.Y.S.2d 577], the court held that a general contractor, on the basis of delays and interference with the work attributable to the state, could recover damages which included an allowance for claims made upon it by its subcontractors even though such claims were unliquidated. In that case the subcontractors even entered into a written agreement with the general contractor to withhold suit and abide the court's determination of the damages suffered by the subcontractors.

*Third. Did the statute of limitations bar the claims asserted in the amendment to respondent's first amended complaint, filed on February 5, 1957?* Respondent filed its first amended complaint on July 18, 1955. The parties entered into the contract on August 15, 1952. Clearly the applicable four year statute of limitations had not run. (Code Civ. Proc., § 337.) Respondent prayed for judgment of $51,076.61. In respondent's deposition taken shortly after the filing of the complaint, appellant learned this amount included the claims for damages suffered by the subcontractors. Thus, no new cause of action was stated in the amendment of February 5, 1957, which detailed these claims of the subcontractors. Its content should not have surprised appellant. The statute of limitations did not run on the amendment, which in effect merely made plaintiff's first amended complaint more specific as to damages. (2 Witkin, California Procedure, § 592(b)(1), p. 1603.)

*Fourth. Should appellant's special demurrers for uncertainty and ambiguity have been sustained?* Although respondent asked appellant at the trial if it claimed surprise as to the claims of the subcontractors contained in the amendments, it did not answer the query. Furthermore, at the time of the filing of these pleadings, at the end of the trial, the issues encompassed in the amendment to plaintiff's complaint

had already been tried. It is difficult to conceive of any "uncertainty" or "ambiguity" to which appellant could have been subjected. If any existed, it was waived by appellant's answer, which was filed after the demurrer was overruled. (2 Witkin, California Procedure, § 503, p. 1493.)

3. *The issue as to the form of the findings and judgment.*

Appellant's two contentions in this regard cannot be sustained.

▆▆ *First.* *Should the trial court have made separate findings of fact with respect to each claim?* Although appellant states that it made a request for separate findings on each claim, the record does not substantiate the contention. In any event, a judge is not required to incorporate evidentiary facts in his findings. (*Culjak* v. *Better Built Homes, Inc.* (1943), 58 Cal.App.2d 720, 723 [137 P.2d 492].)

▆▆ *Second.* *Should the judgment have limited respondent's recovery to special assessment funds from Sanitation Sewerage Project Number 1952-1?* Section 10425 of the Streets and Highways Code provides: "If the first assessment or the sale of bonds to represent assessments levied . . . fails to raise sufficient money to pay all costs, *damages,* . . . the legislative body *may pay the deficit out of the general fund,* or may order a supplemental assessment to pay the deficit." (Emphasis added.)

While section 10424 of the code indicates that loans may be made from the general fund to the special fund, section 10425 does not require that the general fund must first lend the money to the special fund for the payment of damages. Rather it gives the legislative body an option of paying damages out of the general or special supplemental assessments. This option should not be construed to afford a defendant the choice of deciding whether it will pay the judgment rendered against it.

Appellant cites *McBean* v. *San Bernardino* (1892), 96 Cal. 183 [31 P. 49], for its proposition that the judgment should run against only the special fund. That case involved a suit by the contractor against the city. The contract, for sewage construction, pursuant to a statute (Stats. 1885, p. 147) contained a clause " 'that in no case . . . will the city, or any officer thereof, be liable for any portion of the expense, nor for any delinquency of persons or property assessed.' " (P. 185.) This was merely held to mean what it said.

Appellant's resubmission of arguments concerning evidence presented at the trial court cannot succeed upon appeal.

We affirm the judgment.

Bray, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied November 9, 1959, and appellant's petition for a hearing by the Supreme Court was denied December 10, 1959.