480 A.2d 795

## BOARD OF COUNTY COMMISSIONERS OF FREDERICK COUNTY

v.

## CAM CONSTRUCTION COMPANY, INC.

No. 95, Sept. Term, 1983.

Court of Appeals of Maryland.

Aug. 24, 1984.

Branko Stupar, Potomac (Lawrence E. Speelman, Frederick, on the brief), for appellant.

J. Richard Margulies, Baltimore (Herman M. Braude, William M. Huddles and Braude, Margulies, Sacks & Rephan, Chartered, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Specially Assigned Judge (Retired).

RODOWSKY, Judge.

Arbitrability is the issue on this appeal. The prime contractor on a building construction project demanded arbitration with the owner. Part of the recovery sought by the prime consists of losses allegedly suffered by subcontractors. Because there is no privity of contract between the owner and subcontractors, the owner denies that the arbitration agreement in the prime construction contract is one to arbitrate "subcontractors' claims." We shall reject this contention and hold that the standing of the prime to claim the losses is, at a minimum, sufficient to carry the matter to arbitration.

The project is the new Frederick County Courthouse and Multi-Service Center. By written contract dated November 13, 1978 the Board of County Commissioners of Frederick County (the County), as owner, engaged Cam Construction Company, Inc. (Cam), as contractor, to build the project. Part of the integrated contract is the General Conditions of

the Contract for Construction as set forth in American Institute of Architects Document A 201–1976. Paragraph 7.9.1 of these general conditions contains an arbitration provision which in relevant part reads:

> All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.... No arbitration shall include by consolidation, joinder or in any other manner, parties other than the Owner, the Contractor and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration.

By ¶ 17.1.A.2 of special supplementary conditions to the contract, the parties added a provision that

> [t]he General Contractor only shall be recognized as a part [*sic*] of this Contract and it shall be his responsibility to turn over to the Owner a project complete in all respects and in accordance with the Contract Documents.

On August 11, 1982 Cam demanded arbitration with the County and took the position that the contract had been substantially completed. Attached to the formal demand was a general description of the claims. Cam sought retainage of $491,000 and also an unspecified sum as damages resulting from the owner's alleged refusal to allow Cam access to the work site. Paragraphs 4 and 5 included the following allegations:

> 4. During the course of the project, CAM and its subcontractors were continuously delayed and disrupted by actions or inactions which were caused [by] or attributable to the Owner and/or the Architect. The causes of said delays and disruptions are more fully enumerated in Exhibit D.

5. The delays and disruptions enumerated in Exhibit D resulted in additional costs to CAM and its subcontractors in the total amount of $1,660,871.30 for which CAM and its subcontractors are entitled to be renumerated [*sic*]. Said additional costs are more fully itemized in Exhibit D.

Exhibit D to the demand for arbitration is not part of the record on appeal in this case.

The County responded to the demand for arbitration by filing with the American Arbitration Association an answer which denied the material allegations, and filing a counterclaim which asserted breach by Cam. Then, when the County did not furnish certain discovery which Cam sought, Cam brought an equity action against the County in the Circuit Court for Baltimore County. There Cam invoked the Public Information Act, Md.Code (1980 Repl. Vol., 1982 Cum.Supp.), Art. 76A, §§ 1–5A. That issue is not before us on this appeal. The County counterclaimed for an injunction to restrain Cam from proceeding with the arbitration. Injunctive relief was denied and the County appealed. We granted the County's petition for certiorari and a cross-petition by Cam prior to consideration of the appeal by the Court of Special Appeals.[1]

In its argument the County frequently refers to claims made against it by subcontractors as if subcontractors were parties to the arbitration it opposes. With its feet firmly planted on this unsupported premise, the County easily slays a number of strawmen. It says it has no obligation to arbitrate with parties with whom it has not agreed to arbitrate. It says that joinder of subcontractors as additional parties to the arbitration violates ¶ 7.9.1 of the construction contract. All of this is contrary to the record. Only Cam has invoked the particular arbitration proceeding

---

1. In its cross-petition Cam presented the question:
   Whether a prime contractor may include in its claim against the Owner, the costs incurred for that part of the prime contract work which was performed by the prime contractor's subcontractors and sub-subcontractors.

which the County seeks to enjoin. Cam and the County are the only parties to that arbitration. All of the claims made against the County are asserted in the name of Cam.

The County's argument necessarily rests on the fact that some portion of the recovery claimed by Cam will admittedly be for the account of one or more subcontractors. Beyond this, the record leaves us uninformed. We do not know the identity of the subcontractors or the provisions of their construction subcontracts. The record is silent concerning the facts allegedly giving rise to the losses claimed to have been suffered by subcontractors and concerning the legal theory under which Cam says the County is responsible for those alleged losses. While counsel for Cam advised at oral argument that there are "liquidating agreements" between Cam and subcontractors, respectively, which deal with the relationship of the Cam-invoked arbitration to those claims in which the respective subcontractors are interested, those agreements are not before us. Against the backdrop of this record, the issue narrows to whether Cam has standing to present in its name in arbitration against the County claims for the benefit of subcontractors.

■ It is clear that the concept of privity is not an absolute bar to a suit brought by a prime contractor against the owner for damages as to which a subcontractor is the real party in interest. In point is *United States v. Blair*, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039, *reh'g denied*, 322 U.S. 768, 64 S.Ct. 1052, 88 L.Ed. 1594 (1944), which arose out of the construction of a building for the Veterans' Administration. The prime contractor claimed for the use of a subcontractor who had performed extra work, a characterization with which the contracting officer agreed. The subcontract did not expressly indicate whether the contractor was liable to the subcontractor for the acts of the Government which were the basis for the claim. The contractor had not paid the subcontractor for the latter's additional costs. On the appeal by the Government from

judgment by the Court of Claims in favor of the prime contractor, the Supreme Court said:

> Clearly the subcontractor could not recover this claim in a suit against the United States, for there was no express or implied contract between him and the Government. *Merritt v. United States,* 267 U.S. 338 [45 S.Ct. 278, 69 L.Ed. 643]. But it does not follow that respondent is barred from suing for this amount. Respondent was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble and soapstone work whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of respondent under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. Respondent's contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract. *Hunt v. United States,* 257 U.S. 125 [42 S.Ct. 5, 66 L.Ed. 163]. [321 U.S. at 737–38, 64 S.Ct. at 824, 88 L.Ed. at 1044–45.]

■ To the same effect is *Buckley & Co. v. State,* 140 N.J.Super. 289, 356 A.2d 56 (1975). After holding that the claims of certain subcontractors for damages for delay had not been released, the court held that the prime contractor could claim on their behalf. After citing *D.A. Parrish & Sons v. County Sanitation District No. 4,* 174 Cal.App.2d 406, 344 P.2d 883 (1959), *St. Paul Dredging Co. v. State,* 259 Minn. 398, 107 N.W.2d 717 (1961), *Tully & Di Napoli, Inc. v. State,* 51 Misc.2d 11, 272 N.Y.S.2d 667 (Ct.Cl.1966) and *J. Harry McNally, Inc. v. State,* 170 Misc. 914, 11 N.Y.S.2d 577 (Ct.Cl.1939), the New Jersey court went on to explain how

> [t]he cases are consistent in their holdings that a contractor may bring such claims on behalf of a subcontractor; that the lack of privity between the subcontractor and the contractee is no bar to the action, and that a liability of

the contractor to the subcontractor fixed and delimited by a liquidating agreement as here is a sufficient basis for the contractor to assert a claim of loss or damage.

The holdings are soundly based in reason and equity. They recognize that a direct claim by a subcontractor against a contractee is barred by concepts of privity as well as contractual provisions such as here, and that if the contractor himself is barred from asserting those claims, the contractee would be in the extraordinary position of being responsible to no one regardless of the nature or extent of its liabilities under its contract. No proper justification exists for such a result. Rather, the principle adopted by the cases is that the contractee should be responsible to the contractor for costs or damages resulting from the performance or breach of the contract, whether the contractor performed the work himself or sublet it to others. [140 N.J.Super. at 319–20, 356 A.2d at 73.]

And *see U.S. Industries, Inc. v. Blake Construction Co.,* 671 F.2d 539 (D.C.Cir.1982) (subcontractor entitled to assert claims on behalf of second-tier subcontractors against prime contractor).

In order to decide the instant case it is not necessary to decide whether or not there are any circumstances under which Maryland law bars a prime contractor from suing the owner for the benefits of a subcontractor, or, if so, to define the circumstances under which such suits may and may not be maintained. This is because the County rests on the legal theory that lack of privity is an absolute bar where it is admitted that the claim made in the name of the prime will inure to the sub. That theory falls in the face of the fact that courts have recognized claims brought by a general contractor on behalf of a subcontractor. Consequently, we cannot say that every prime contractor claim on behalf of a subcontractor lies beyond the scope of the instant agreement to arbitrate "[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the

breach thereof ...." If the language of an arbitration clause is unclear as to whether a dispute falls within its scope, it is for the arbitrators to decide whether the arbitration clause encompasses the claim. *See Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 105, 468 A.2d 91, 96 (1983).

One of the decisions which we cited in *Gold Coast Mall* to support the foregoing proposition was *University of Alaska v. Modern Construction, Inc.*, 522 P.2d 1132 (Alaska 1974). In that case the court refused to set aside an award in arbitration made in favor of a prime contractor against the owner where it was contended that unverified claims of subcontractors were included in a lump sum award. This argument was held insufficient to overcome the presumption of validity. The arbitration clause in that case was identical in scope to the one in the case at hand and arbitrability seems to have been accepted. The objection of the owner was that the arbitrators had not itemized those claims on behalf of subcontractors which had been allowed and had not specified the amounts which had been awarded thereon.

In its reply brief in this Court, the County for the first time invokes a body of rules which has haunted Government contract litigation and which is known as the *Severin* doctrine. A brief summary of the doctrine will provide sufficient background to present the County's argument and the reason why it is inapplicable here.

*Severin v. United States*, 99 Ct.Cl. 435 (1943), *cert. denied*, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944) was a case of loss caused by the Government's failure timely to make a delivery. The subcontract exonerated the prime from liability to the sub for loss due to delay on the owner's part. It was held, over a dissent, that the prime could not have judgment for damages suffered by the subcontractor but could recover only the additional overhead incurred by the prime which was measured by 10% of

the subcontractor's additional costs. The court said (99 Ct.Cl. at 443):

Plaintiffs therefore had the burden of proving, not that someone suffered actual damages from the defendant's breach of contract, but that they, plaintiffs, suffered actual damages. If plaintiffs had proved that they, in the performance of their contract with the Government became liable to their subcontractor for the damages which the latter suffered, that liability, though not yet satisfied by payment, might well constitute actual damages to plaintiffs, and sustain their suit. Here, however, the proof shows the opposite. [The court then quoted the exculpation provision of the subcontract.] Thus plaintiffs, effectively so far as we are advised, protected themselves from any damage by way of liability over to the subcontractor for such breaches of contract by the Government as the one which occurred here.

The *Severin* decision has been criticized as unsound. Garrett, Jr., *Construction Law in Georgia—A Return to Severin*, 30 Emory L.J. 1109 (1981); Penne, *Legal Remedies of the Government Subcontractor*, 32 S.Cal.L.Rev. 1 (1958); Whelan and Gnoss, *Government Contracts: Subcontractors and Privity*, 10 Wm. & Mary L.Rev. 80 (1968); 66 Colum.L.Rev. 802 (1966). More significantly, the Court of Claims itself has created exceptions to the *Severin* doctrine, and placed the burden on the Government to show that the case is one within the doctrine and not within its exceptions.

As currently phrased, the doctrine is that suit may be maintained by the prime contractor "only when [it] has reimbursed its subcontractor for the latter's damages *or remains liable for such reimbursement in the future.*" *J.L. Simmons Co. v. United States*, 304 F.2d 886, 888, 158 Ct.Cl. 393 (1962) (emphasis added). The italicized prong of the test is satisfied where "the prime contractor has agreed to reimburse its subcontractor for damages it has suffered at the hands of the Government, but only as and when the former receives payment for them from the Government."

*Id.* at 889. Nor does the *Severin* doctrine bar a claim by the prime contractor on behalf of the subcontractor for an equitable adjustment provided by the prime contract, even if the subcontract completely exonerates the prime contractor from liability. *See Seger v. United States,* 469 F.2d 292 (Ct.Cl.1972); *Blount Brothers Construction Co. v. United States,* 348 F.2d 471, 172 Ct.Cl. 1 (1965). As the *Severin* doctrine has evolved, the burden of proof has been placed on the Government to show that there is no liability of the prime contractor to the subcontractor as opposed to requiring the prime contractor to show that it is liable to a subcontractor on whose behalf the claim is brought. *See Garod Radio Corp. v. United States,* 307 F.2d 945, 158 Ct.Cl. 596 (1962); *J.W. Bateson Co. v. United States,* 163 F.Supp. 871, 143 Ct.Cl. 228 (1958); *Donovan Construction Co. v. United States,* 149 F.Supp. 898, 138 Ct.Cl. 97, *cert. denied,* 355 U.S. 826, 78 S.Ct. 34, 2 L.Ed.2d 39 (1957).

█ Turning to the case at hand we note that the County's argument assumes that Cam would be precluded from invoking arbitration on behalf of subcontractors if, under analogous facts, the *Severin* doctrine would bar Cam from recovering on behalf of subcontractors in a Government contract setting. We shall assume, *arguendo,* that the *Severin* doctrine is relevant to the issue of arbitrability presented here. Nevertheless, the County has not proved facts making this a case to which the *Severin* doctrine would apply. In the trial court the County counterclaimed for an injunction. As the moving party on that issue, the County had to prove facts showing entitlement to an injunction. Under the *Severin* doctrine itself, the owner has the burden of proving the absence of prime contractor liability to the subcontractor which is essential for the application of the doctrine. Here there is no proof that subcontractors have released Cam, or by contract exculpated Cam from liability for whatever might be the basis of the claims. The record does not foreclose Cam's being obligated under liquidating agreements to pay any recovery from the County over to the respective subcontractors. The *Severin*

doctrine cannot be applied here to reverse the denial of an injunction against continuing the arbitration. Nevertheless, if the County wishes to press this argument before the arbitrator after any supporting facts have been presented, it would seem free to do so.

██ Finally, the County seems to argue that damages suffered by a subcontractor may not be recovered through a claim on their behalf by the prime contractor because protection for subcontractors is provided under the "Little Miller Act," Md.Code (1957, 1981 Repl.Vol.), Art. 21, § 3–501. Nothing in the statute suggests it is an exclusive remedy. Indeed a Miller Act suit may be stayed pending the completion of arbitration. *See United States ex rel. Commonwealth Coating Corp. v. Continental Casualty Co.,* 214 F.Supp. 949 (D.P.R.1963).

Under the foregoing disposition of the County's appeal, we do not reach the question raised in the cross-petition for certiorari filed by Cam.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY BOARD OF COUNTY COMMISSIONERS OF FREDERICK COUNTY.