DECISION
This matter is before the Court by consent of the parties with respect to the plaintiff's request for preliminary and permanent injunctive relief and defendant's objection thereto.
The factual background is that in January 1999 the Department of Administration on behalf of the Board of Governors for Higher Education, the governing body of the University of Rhode Island and holder of legal title to all public property used by the University (together hereinafter the "State"), issued an invitation to bid with respect to the construction of a new building and facility for the Coastal Institute to be built on the University's main campus in Kingston, Rhode Island. Ultimately, the prime contract, which contained at Section 4.6 of General Conditions of the Contract for Construction, a dispute resolution provision providing under certain circumstances for arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, was awarded to Hodess Building Co., Inc. (Hodess). Hodess entered into a subcontract for building construction with defendant here, Infinity Construction Services, Inc. (Infinity) by the terms of which Infinity was to perform the excavation work provided in the prime contract between the State and Hodess.
Infinity claims that site conditions required substantially more excavation work then was contemplated and, further, that under the prime contract, site condition was the State's responsibility.
Hodess and Infinity entered into a written Liquidation Agreement in March 2000 which inter alia provided:
 "Whereas, in response to Infinity's claim against Hodess for its additional costs in connection with the Differing Site Conditions Claim Hodess has offered Infinity the option of pursuing the Claim directly against the Owner (State), in the name of Hodess. . .
 1. Hodess agrees to permit Infinity to pursue the Claim directly against the Owner, in the name of Hodess, as if made by Hodess itself, pursuant to the terms and conditions of the Owner/Contractor Agreement and the Subcontract Agreement. Infinity shall pursue the Claim directly against the Owner at its own cost and expense, inclusive of any and all expert and/or consultant fees, legal fees, administrative costs, filing fees, or any other expenses associated therewith.
 . . .
 3. . . . Infinity agrees to accept, in full discharge of any obligation that Hodess might otherwise have to it in connection with this Claim, the amount, if any, which Infinity recovers from the Owner in the name of Hodess, and to release Hodess of all liability in connection with said Claim.
 4. In addition to presenting its Claim against the Owner, Infinity shall present on behalf of Hodess a claim for general contractor markup for overhead and profit on the Claim, but shall have no obligation to Hodess in the event that the claim for general contractor markup is denied . . . ."
Purporting to be acting pursuant to the provision of the Liquidation Agreement, Infinity filed a Demand for Arbitration on or about May 3, 2000 with the American Arbitration Association. The State claiming it has no agreement with Infinity and that all State purchase orders, contracts, solicitations, etc. shall incorporate and be subject to the provisions of Title 37, Chapter 2 of the General Laws of the State of Rhode Island, the regulations adopted pursuant thereto and all applicable provisions of our General Laws as well as certain specified general conditions of purchase which include the following:
 "2. d. It is mutually understood and agreed that the contractor shall not assign, transfer, convey, sublet or otherwise dispose of this contract or his right, title or interest therein, or his power to execute such contract, to any other person, company or corporation, without the previous consent, in writing, of the purchasing agent."
and that the purchasing agent neither was asked to nor ever did consent to the Liquidating Agreement has declined to participate in an arbitration proceeding and seeks, pursuant to the provisions of R.C.P. 65 (a)(2), preliminary and permanent injunctive relief precluding the requested arbitration proceeding.
 DISCUSSION
Infinity urges upon the Court that this case is about "pass through claims" from a subcontractor to a contractor against an owner. Citing Clark-Fitzpatrick, Inc. v. Gill, 652 A.2d 440, 449 (R.I. 1994), it quotes our Supreme Court's language:
 "A subcontractor can pass its claim through to the owner via the general contractor. A subcontractor is entitled to the benefit of its bargain when the subcontract is terminated because the owner has breached its contract with the prime contractor."
The same rational should pertain even if the subcontract has not been terminated but where cognizable damages result to the subcontractor by reason of a breach of the prime contract by the owner. A number of jurisdictions have commented favorably upon liquidation agreements in general when authorizing the contractor to assert the subcontractor's claim against the owner. See for example,Board of County Commissioners v. Cam Construction Co., 480 A.2d 795
(Md. App. 1984).
As this Court reads the submissions of the parties, it is not at all sure that the State would disagree with what might almost be taken as black letter law; that is to say, the position espoused by Infinity above. However, the State argues that here it is the sub purporting to act in the name of the prime that impermissible seeks arbitration.
This Court views the State's position as dealing more with form than with substance. The State here, of course, is not in privity with Infinity. It is Infinity (although acting in the name of Hodess) which seeks arbitration. The State contests pointing to an opinion of the Appellate Court of Connecticut, Wesleyan University v.Rissil Construction Associates, Inc., 472 A.2d 23 (1984). In that case, one factually similar to the instant matter, the University contracted with a prime to supervise construction of a new campus building. The prime entered into a subcontract with defendant to perform certain work as required for the construction. The University was not a signatory to the subcontract. The issue before the court as stated by the Chief Presiding Judge writing for the court was:
 "The sole question upon appeal is whether Wesleyan, which has agreed to arbitrate with ENF (the prime) all claims arising out of, or relating to, the contract between them is required . . . to arbitrate claims with Rissil (the defendant) arising out of a subcontract to which Wesleyan was not a party." 472 A.2d. at 24.
The court went on to state at page 25 as follows:
 "Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. Even though it is the policy of the law to favor settlement of disputes by arbitration, arbitration agreements are to be strictly construed and such agreement should not be extended by implication . . . the basis for arbitration in a particular case is to be found in the written agreement between the parties. . . persons thus cannot compel arbitration of a disagreement between or among parties who have not contracted to arbitrate the disagreement between or among themselves. . . Wesleyan never contracted with Rissil. Because of this one salient fact Rissil may not arbitrate its dispute if any with Wesleyan." (Citations omitted.)
Heretofore, this Court referred to the matter before it as one which may involve form rather than substance, and while usually substance rather than form ought control, here it is abundantly clear that there is no privity between the State on the one hand and Infinity on the other. Further it is clear to this Court that under the provisions of the Liquidation Agreement quoted above, the party to the arbitration sought by Infinity is Infinity. The "window dressing" of authorizing Infinity to bring the proceeding in the name of Hodess is belied by the provisions quoted from the Liquidation Agreement. Accordingly, because this Court finds that the State cannot be compelled to arbitrate with one that it has not agreed to arbitrate with, a permanent injunction shall issue precluding Infinity from seeking arbitration with respect to alleged breaches by the State of its contractual agreement with Hodess as to the project known as the Coastal Institute Main Campus Building at the University of Rhode Island Kingston Campus. Nothing contained in the order and judgment to be entered herein shall preclude Hodess itself, if it sees fit so to do, from seeking arbitration with respect to differing site conditions from those contemplated under the original contract documents.