Alexander Del Giorno, J.
This is a motion by the State for' an order dismissing the claim of Nicholas Di Henna & Sons, Inc., the subcontractor claimant. Motion is granted.
On June 18, 1959, claimant Tully & Di Napoli, Inc., entered into a contract with the State, No. FIBE 59 — 1, for the construction of Bruckner Expressway in Bronx County.
On June 18, 1959, anticipatory to the award of the contract to it, Tully • & Di Napoli, Inc., entered into a substantial subcontract with the claimant Nicholas Di Henna & Sons, Inc., which was finalized after the execution of the Tully contract with the State and approval of Di Henna by the State.
In accordance with the Public Works Department specifications of January 2, 1957, Tully submitted to the State for its approval the Di Henna contract which the Department of Public Works approved on July 20, 1959.
*12 The language of the subcontract agreement underlies a prevalent fear by subcontractors that the occasion may arise whereby the contractor’s portion of the claim may be so small or be so incumbered that the contractor may not care to file a claim or, perhaps, may lack funds to pay counsel, experts, etc., to prosecute the claim. This type of agreement is loaded with assurances and almost guarantees by the contractor that not only will he be fair to the subcontractor on the established subcontract agreement, but will pursue on his behalf the claim, to the end that the subcontractor, too, will receive whatever may be proven to be due to him out of a possible award.
This fear of possible difficulties in proving to the court what may be due to the subcontractor as well as the collection of the amount proven is prevalent throughout this type of public subcontracts, as the court has discovered in many meetings and conferences with those in the business, including attorneys who specialize in this difficult trial work.
It would seem to .the court that a few changes in our statute law or the constitutional provisions would produce salutary results, beneficial to all involved, including the State, and would expedite trial procedure.
On its face the claim seems substantial regarding the claims of both contractor and subcontractor. The issue here is not whether it is substantial and meritorious but whether the subcontractor has a right to have its name in the title of the claim as one of the claimants. The court holds that Tully may mention Di Henna in the body of the claim as often as it is deemed necessary to describe the particular work for which Di Henna claims and the amount thereof. Only in that way may Tully bring before the court the total of its claim against the State. That, however, may be done only as a reference and a basis for justifying the proof to be offered by Tully.
In this regard, and before any further discussion of the present motion, the court grants the motion to strike out the name of the subcontractor from the title of the claim, but determines, under the rules of fair play, simple justice, the avoidance of repetitious suites, and of right, etc., that the entire claim may remain as the claim of claimant Tully & Di Napoli, Inc., which the court considers as a follow-up of its notice of intention to file a claim. Whatever sums are to be paid by Tully to Di Henna may be determined according to their liquidating agreement of November 24, 1965. The order to be entered shall state these facts.
The subcontractor insists that he has a right to remain as a claimant and calls upon the decision of this court in Ottaviano v. *13 State of New York (Claim No. 42583), among others, to sustain its position. In that ease, the title of the claim bore the names of the contractor, many subcontractors, as well as financial assignees who had made loans to Ottaviano to whom he had assigned to the extent of the loan his claim as a guarantee of payment. In addition to the State, the Thruway Authority was also named as a defendant. Upon the argument of the motion on the return date thereof, the court immediately granted the State’s motion to dismiss the claims of the financial assignees, but let the balance of the claims of the contractor and subcontractors stand as they were for the reason that at that time it was not entirely clear as to whether or not the claims of the subcontractors could stand against the Thruway Authority if not against the State. The order of the court specified that the denial of the entire motion was without prejudice to the State’s renewing said motion at any time before trial or at the trial itself. A reading of the order made in the Ottaviano case clearly indicates that it was not a denial of the State’s motion but it was qualified by the facts above mentioned.
Tully & Di Napoli, Inc., on October 26, 1961, filed its notice of intention to file a claim in which it not only made claim for the subject matter now specified in the claim, but also included therein the substance of what is now Di Henna’s claim.
In the liquidating agreement of November 24, 1965, among other things, the contractor and subcontractor agreed thus:
Contractor shall present to the State of New York in the form and in the manner required by the contract and specifications and by claim to the Court of Claims of the State of New York, Subcontractor’s claims as set forth in Schedule “A” [of liquidating agreement], arising out of, under, or in connection with the subcontract performed as a part of the work under the contract, liability and obligation for which is, as aforesaid hereby acknowledged by Contractor, said obligation being expressly conditioned as hereinafter provided in this agreement, together with other and further claims which Contractor may have and the claims of other subcontractors, if any.
The liability and obligation of Contractor to Subcontractor to pay said claims of Subcontractor as set forth in Schedule “A” is conditioned upon, payable only from and out of, and limited to, collection or recovery by Contractor from The State of New York in the Court of Claims of The State of New York or as the result of appeal.
Contractor agrees that promptly following the making of the Final Estimate under the contract, it will institute in its own name a claim, in accordance with the laws of the State of New York in the Court of Claims of that State to recover, with interest, the amounts due to Contractor for unpaid balance of amounts earned by Contractor in its performance of the contract and any supplemental agreements in connection therewith and for retained percentages, and also for the amount of the claims as set forth in Schedule “ A ”, for which Contractor has and does acknowledge liability, which may include any other and further claims of Contractor or Subcontractor as promptly as may be possible.
*14 It is agreed by and between the parties hereto that the claim of Subcontractor as set forth in Schedule “A”, for which Contractor’s liability to Subcontractor has been and is acknowledged, shall be prepared by counsel designated by Subcontractor for presentation as a part of the claim to be made in the Court of Claims by Contractor against the State of New York.
In the claim which shall be brought against The State of New York in accordance with the provisions hereof, the parties hereto shall use their best efforts to have the decision or award in such form that it will provide what amount has been allowed for the claims of Subcontractor as specified in Schedule “A”.
It is perfectly evident that these eminent attorneys who represent contractors as well as subcontractors were and are aware of the provisions of the law which exclude the right of subcontractors to sue the State directly, a fact which is made abundantly clear by the language of the liquidating agreement.
They also must realize, we are sure, that there is no privity between the subcontractor and the State, nor that the subcontractor has a right to sue as a third-party beneficiary of the contract. The State is solvent. It consents to be sued by the one with whom it has entered into the obligation of the contract, and does always pay upon final determination of its obligation. It owes nothing directly to the subcontractor, who, nonetheless, is permitted to testify and who, no doubt, is the most competent witness concerning the portion of the contractor’s claim involving his own work. (N. Y. Const., art. VI, § 9 ; Court of Claims Act, § 9.)
We may not allow the subcontractor to be joined as a party claimant because there is no dispute as to the agreement between the contractor and subcontractor or the subcontractor and the State.
The contractor and subcontractor also agree as to all items involved in the claim and they agree further to accept the judgment of the court as a basis of finally liquidating their claims as agreed in the liquidating agreement. The matter is disputed only by the State together with the right of the subcontractor to sue for what he states represents his share. The fact that the State imposes the requirement of its approval of a subcontract before the subcontractor may enter on the job is not a recognition or admission of its direct liability to the subcontractor. The approval is merely a protection of the financial obligation assumed by the State under the contract. The passing upon the ability, integrity and competence of the subcontractors engaged by the contractor is done only to ascertain that adequate performance will be rendered by the contractor or those he wishes to hire to perform portions thereof.
*15 Both the subcontractor and the State have presented excellent briefs. The court finds that the many cases cited by the subcontractor in one way or another differ from this situation and are not analogous to the facts herein presented.
It is somewhat distasteful for the court to have to disagree with the claimants, but the Constitution and statutes forbid any other determination. The liberal provisions of the CPLB do not create a right which is not given by the Constitution and Court of Claims Act which have remained intact in this respect.
The Judges of this court have fought valiantly in their many decisions to bring many provisions of the Court of Claims Act into harmony with modern-day concepts of the appropriation of the land. These, however, apply to practice and procedure but not as to the right to sue the State. The peripheral doubts which exist in almost any such contract, such as probable bankruptcy of the contractor, or an overload of assignments or judgments by or against the contractor, a minimal balance due to the contractor on his own work on the contract — all may cause indifference or even refusal on his part to proceed with the claim, thereby leaving the subcontractor in a state of suspension or even inability to proceed. That is true and that is the cause of the court’s anguish many times. We may only suggest that where the contractor fails or refuses to proceed to file a claim, probably a proceeding in the Supreme Court may permit such subcontractor to file a claim for his portion of the amounts in dispute on the basis of equity, but we also agree that success may be problematical, although extra expenses and loss of time are certain; but such is the law which we may not change with impunity.
The case of Horoch v. State of New York, (286 App. Div. 303) is one wherein the State was attempting to bring in an additional party against whom the State could seek judgment over in the event the State was held liable in the claim pending against it. The court therein denied the State’s application for it held that in the Court of Claims which is a court of limited jurisdiction there was no right to implead, although section 9 of the Court of Claims Act authorized an interpleader of other parties for a complete determination of the claim. The court further stated that the interpleader of a third party who has no claim against the State for the purpose of allowing the State to assert a claim against such third party is not authorized and would be unconstitutional. As we read that decision, the Appellate Division would not permit the joining of the contractor and subcontractor herein for the reason that the subcontractor has *16 no claim against the State and, in a sense, to allow the subcontractor to remain herein as a claimant would be tantamount to permitting the impleading of the parties claimant. What the court finds of great interest is the fact that the Appellate Division saw fit to suggest that such right as requested therein must await such time as the State consents to be sued in a court of general jurisdiction or (inferentially) the changing of the Constitution and the Court of Claims Act permitting the joining of a contractor and subcontractor in circumstances as herein delineated.
We would also suggest to all parties involved herein, including the State, that they work towards a change in the statute which, in a general way, would state: “ Provided that a subcontractor or subcontractors on a public contract have been approved by the State, such subcontractor or subcontractors may join with the contractor in a claim which may be filed against the State, in which he shall specify the nature of his claim, extra work, labor and/or delays imputed to the fault, laxity or interference of the State with the contract work which resulted in damages to him for which he demands judgment. In the event of any dispute arising at the trial as to any items of the claim between the contractor and subcontractor, such issue may be determined by the Court of Claims. In the event of the failure of the contractor to proceed with the filing of his claim or the trial thereof after it is filed, the Court, upon good cause shown, may order the parties to try the subcontractors’ claim upon which judgment may be entered in favor of the subcontractor or subcontractors claimants. Thereafter, the contractor may not be heard to complain regarding the result of said trial.” Some changes along the lines we suggest here would, take the doubt out of public works contracts, afford each party the security of pay for his part of the contract, establish better relations between the State and contractors, and generally benefit the public weal. To achieve this end it may also be necessary to change the Constitution. We are about to witness the meeting of a Constitutional Convention, and the opportunity for contractors and their legal advisors is at hand.