**C. H. LEAVELL & COMPANY**

v.

**GLANTZ CONTRACTING CORPORATION OF LOUISIANA, INC., and Amsterdam Company.**

**C. H. LEAVELL & COMPANY**

v.

**INTERNATIONAL ERECTORS, INC., Home Owners Insurance Company, United States Fidelity & Guaranty Company, and American Employers.**

**C. H. LEAVELL & COMPANY**

v.

**BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS and Department of Highways, State of Louisiana.**

**Civ. A. Nos. 67–1011, 68–1705 and 69–725.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Jan. 25, 1971.

See also 424 F.2d 764.

William J. Derrick, El Paso, Tex., Peter A. Feringa, Jr., New Orleans, La., for plaintiff.

Julian H. Good, New Orleans, La., for Reilly-Benton Co. and Westinghouse Electric Corp.

A. Morgan Brian, Jr., New Orleans, La., for New Amsterdam Casualty Co. and Security Ins. Corp. of Hartford.

P. A. Bienvenu, New Orleans, La., for Glantz Contracting Co.

Clarence F. Favret, Jr., New Orleans, La., for Eastern Steam Specialty Co., Demco, Inc., American Air Filter Co., Inc., Barber-Colman Co. and Honeywell, Inc.

A. R. Christovich, Sr., New Orleans, La., for Rinco Engineering.

Joseph E. Friend, New Orleans, La., for Worthington Corp., Sarco Co., Inc. and Barnebe Cheney Co.

David J. Conroy, New Orleans, La., for Chrysler Corp.

Ralph Kaskell, Jr., New Orleans, La., for Curtis & Davis, Associated Architects & Engineers, Edward B. Silverstein & Associates, and Mathes, Bergman & Associates.

A. Remy Fransen, Jr., New Orleans, La., for U. S. Fidelity & Guaranty Co.

Harvey C. Koch, New Orleans, La., for International Erectors and Home Owners Ins. Co.

Sumter D. Marks, Jr., New Orleans, La., for Bd. of Comrs, Port of New Orleans.

Merrill T. Landwehr, New Orleans, La., for Standard Supply & Hardware Co.

Curtis R. Boisfontaine, New Orleans, La., for Capitol Iron and Steel Co.

H. Gordon Hartman, New Orleans, La., for Delta Testing and Inspection, Inc.

RUBIN, District Judge:

A motion for summary judgment here raises the question whether a contract between a building owner and its architects constitutes a stipulation pour autrui in favor of the contractor engaged to construct the building, and whether the architect is impliedly a party to the owner's agreement with the construction contractor.

The Board [1] wanted to build an exhibition facility, to be called Rivergate. It agreed with Architects [2] to provide professional services to the Board in connection with this project. Two years later the Board engaged Leavell [3] as general contractor to construct Rivergate.

Leavell claims that it suffered damages because of unreasonable delays occasioned by improperly prepared plans, late delivery of plans and working drawings, untimely change orders and improperly issued correction data, and other contractual violations attributable to the Board and the Architects, and sued both of them for $5,100,000 plus interest, attorneys' fees, and court costs. The suit against the Board has been settled. The Architects now move for dismissal of the claims against them or for summary judgment in their favor.

The three-page contract between the Board and the Architects is basically the standard agreement issued by the AIA.[4] It provides that, for a fee of 6% of the construction costs, the Architects will provide the usual professional services.[5]

Leavell's contract with the Board bound it to construct the entire international exhibition facility, in accordance with the plans and specifications "to the entire satisfaction of the * * * Board." This contract states that the Architects "are the representatives of the [Board] [6] duly authorized to interpret compliance with plans and specifications, supervise the work, approve monthly estimates and to render such services of a general administrative nature as the [Board] may request."[7]

The Architects' status is discussed in Sec. 43 of the "General Conditions" of the contract between Leavell and the Board:

a) The Architect shall have general supervision and direction of the work. He is the agent of the Owner only to the extent provided in the Contract documents and when in special instances he is authorized by the Owner so to act; in such instances, he shall show the Contractor written authority upon request. He has the authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract.

1. The Board of Commissioners of the Port of New Orleans.

2. Associated Architects is a collective association of three architects' firms, Curtis & Davis Associated Architects and Engineers, Edward B. Silverstein & Associates, and Mathes, Bergman & Associates, who agreed to collaborate on the entire Rivergate project.

3. C. H. Leavell & Co.

4. American Institute of Architects.

5. These are defined to include:
"the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, for architectural, structural, plumbing, heating, electrical, and other mechanical work;

assistance in the drafting of forms of proposals and contracts; the issuance of certificates for payment; the keeping of accounts, and the general administration of the construction contracts."
The contract further provides:
"The architect will endeavor by general administration of the construction contracts to guard the Owner against defeats and deficiencies in the work of contractors, but he does not guarantee the performance of their contracts."

6. The contract refers in terms to the Engineer who is elsewhere identified as the "Director of Engineering of Board."

7. The Architects are not authorized to award the contract, give notice to begin construction, or finally accept the work.

b) It is agreed and understood that the Architect shall supervise the work to the best of his ability and judgment and that he shall use his best endeavors to see that the drawings and specifications are strictly adhered to and complied with by the Contractor, but under no consideration shall the Architect be responsible for bad workmanship and inferior or improper materials that may have been incorporated in the work by the Contractor.

c) In case of the termination of the employment of the Architect, the Owner shall appoint a capable and reputable Architect, against whom the Contractor makes no reasonable objection; whose status under the contract shall be that of the former Architect.[8]

## 1. IS THERE A CONTRACT BETWEEN THE ARCHITECT AND LEAVELL?

■ There is no single contract signed by both the Architect and Leavell. Leavell argues, however, that the lengthy document signed by it and the Board, together with the Architects' contract with the Board, and the working relationship between the Architects and the Board, combine to create a sort of tripartite contractual interrelationship. The contract signed by the Board and by Leavell is relied on to establish duties on the part of the Architects toward Leavell as well as toward the Board.

But nothing to this effect appears on the face of the contract with Leavell, nor can it be reasonably inferred from that contract that the Architects were undertaking a contractual obligation to Leavell. The Architects did not sign the contract, nor are the Architects named as a party to it. The Architects are referred to in that agreement as the Board's agent (to the limited extent of their authority) just as, in other connections, the Board's full time manager, the Engineer, is referred to as the Board's employee. The purpose of the reference to the Architects in Leavell's contract was to define the scope and the limits of Architects' authority as the Board's agent, not to declare the personal responsibility of the Architects, either to the Board for the contractor's work (a responsibility expressly negated) or to Leavell (a responsibility so impliedly excluded that it was not thought necessary to deny it). The Board is given authority "to terminate" the employment of the Architects. Of course the Architects' duties on behalf of the Board involve work with Leavell, so Leavell may make reasonable objection to the person substituted, but the decision to continue the employment of the Architects, or to end it, is the Board's.

Indeed, for the Architects to contract with Leavell would have constituted a breach of the duty they owed the Board, "to guard the Owner against defects and deficiencies in the work of contractors." The contract between the Architects and the Board established what the contract between the Board and Leavell confirmed, that the Architects are "the agent of the Owner" with respect to the administration and supervision of the construction. The Architects' status in that agreement is that of "representatives of the Engineer," that is, of the Director of Engineering of the Board. In the administration of the construction contract, they act for their disclosed principal. It is this agency relationship that distinguishes this case from the case of Visintine & Co. v. New York, C. & St. L. R. Co., 169 Ohio St. 505, 160 N.E.2d 311 (1959), cited by Leavell. In that case, a contractor was held to be a third-party beneficiary and hence entitled to maintain an action on a contract between the State (with whom it had contracted) and several railroad compa-

---

8. The contract also provides that the Architect is to inspect the work, and that the Board could makes changes in the construction through the Architect. Discrepancies between the contract documents are to be called to the attention of the Architect before Leavell performs the work affected thereby.

nies to perform certain construction work that was sequentially prior to the work the contractor had agreed to do. The railroad companies in that case were not agents of the State, but were debtors of the State, owing to it an obligation of performance in proper sequence, which inured, or would have inured, to the benefit of the contractor-beneficiary.

In Thomas G. Snavely Co. v. Brown Construction Co., 16 Ohio Misc. 50, 239 N.E.2d 759 (Ohio Common Pleas, 1968), a subcontractor sued the owner, the general contractor with whom he had contracted, and another contractor for damages resulting from increased cost caused by failure to observe construction schedules set out in the contracts. The subcontractor was held to be a third-party beneficiary. But in that case, the general contractor had subcontracted to the plaintiff a part of the obligation it had undertaken with respect to the owner. Thus, when the delays occasioned by the defendants damaged the subcontractor, he stood in the classic position of the third-party beneficiary. See Restatement, Contracts, Section 133 ff. (1936).

A major purpose of the relationship between the Architects and the Board, with respect to the construction of the Rivergate by Leavell, was to protect the Board against "defects and deficiencies" in Leavell's work. The Architects did not become a contracting party for the benefit of Leavell. They were, as Leavell recognized in paragraph three of their amended complaint, "the duly authorized representatives of the defendants, board and department all of whom were acting in their capacity as such representatives at all times material to this action."

## II. IS THERE A STIPULATION POUR AUTRUI?

Because there is no contract between Leavell and the Architects, and because the Architects' actions were within the scope of their authority, Leavell cannot maintain this action in contract unless it can establish that it is the beneficiary of what the Louisiana cases call a *stipulation pour autrui* in the Architects' contract with the Board.

Article 1890 of the Louisiana Civil Code provides:

> A person may also, in his own name, make some advantage for a third person *the condition or consideration* of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked. (Emphasis supplied.)

█ The fundamental basis of the creation of this relationship is that it be "the condition or consideration" of a contract. The objective of establishing an advantage for the third person need not be express, but may be implied from a consideration of the whole contract considered in the light of the surrounding circumstances. Allen & Currey Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980, 984 (1905).

█ The Rivergate project was a complex and novel undertaking. The contract for architectural services and the construction contract were closely interrelated, and the performance by the Architects of their duties was necessary in order for Leavell to be able to perform the work for which it was employed. But this does not make Leavell a beneficiary of the Architects' contract with the Dock Board. A stipulation pour autrui will be found and enforced only when the contract clearly contemplates the benefit to the third person as its "condition or consideration." Gateway Barge Line, Inc. v. R. B. Tyler Co., 175 So.2d 867 (La.App. 1 Cir. 1965). "[N]ot every promise, performance of which may be advantageous to a third person, will create in him an actionable right." Smith, "Third Party Beneficiaries in Louisiana: The Stipulation *Pour Autrui*," 11 Tulane L.Rev. 18, 28 (1936). See also Allen & Currey Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980, 986 (1905).

In determining whether such a condition or consideration exists, the courts have developed what Professor J. Denson Smith calls a dogma that the existence of a stipulation depends upon the intention to create it. While this does not limit a stipulation to the case where, for motives of generosity, one intends to confer a benefit on another, the advantage stipulated in favor of the beneficiary must be at least contemplated by the promisee. 11 Tulane L.Rev. at 24. At page 58 Professor Smith sets out the determining factors:

> In fine, in undertaking to determine whether an advantage for a third party has been provided by a contract with others, the following factors are important:

> (1) the existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where, (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisee will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended.

By these criteria there is no such stipulation in the contract between the Architects and the Dock Board. This contract was not made to obtain discharge of a legal obligation by the Board to Leavell. It was made to obtain the services of the Architects to design Rivergate and the supervision of the contractors who would eventually be engaged to build it. At the time the Board retained the Architects, there was no relationship between Leavell and the Board. When, two years later, such a relationship arose, the Board undertook obligations to the contractor, but it can hardly be said that the "condition or consideration" of the Board's contract with the Architects was the employment of the Architects to discharge the Board's obligations to whoever might be its ultimate contractor as a major objective. Rather, it is apparent that, to a major extent, the Architects were to serve to procure an advantage to the Board in its own arm's length dealing with the contractor.

When the Board retained the Architects, the parties of course knew that eventually bids would be let and a contractor would be selected. That this was a "complex and novel undertaking" does not alter the Architects' traditional duties to the Board, nor convert the Architects' employment into one created for the advantage of the contractor.

For the above reasons, a partial summary judgment is rendered in favor of the Architects and against Leavell for any claims alleged to sound in contract or by way of stipulation pour autrui. Leavell has asserted other claims in tort. For reasons orally assigned, the motion is denied as to such claims.