**FARRELL CONSTRUCTION CO.**

v.

**JEFFERSON PARISH, et al.**

Civ. A. No. 86–4242.

United States District Court,
E.D. Louisiana.

Aug. 25, 1988.

Gauthier, Murphy, Sherman, Chehardy & Ellis, Laurence D. Rudman, Metairie, La., Butler, Snow, O'Mara, Stevens & Cannada, Phil B. Abernethy, Jackson, Miss., for Farrell Const. Co.

Joseph A. Conino, Asst. Parish Atty., Gretna, La., for Parish of Jefferson.

Galloway, Johnson, Tompkins & Burr, J. Michael Johnson, New Orleans, La., for Burk & Associates, Inc.

Monroe & Lemann, Benj. R. Slater, Jr., Michael R. O'Keefe, III, Trial Atty., Perry R. Staub, New Orleans, La., for Allin–Chalmers Corp.

ARCENEAUX, District Judge.

Currently before the Court is the motion of the defendant, Burk & Associates, Inc. (Burk) for summary judgment. In addition, Burk has filed a "motion in limine" which seeks to exclude consideration of certain of the plaintiff's claims. Below the Court summarizes the undisputed facts relevant to disposition of the motions.

## INTRODUCTION

On January 20, 1983, the plaintiff, Farrell Construction Co. (Farrell) entered into two construction contracts with the defendant, Jefferson Parish, in which Farrell agreed to become the general contractor on two drainage and pump station projects. Jefferson Parish entered into a separate contract with Burk, in which Burk agreed to serve as the engineer or architect for the projects. Farrell entered into a subcontract with Emile M. Babst Company (Babst), in which Babst agreed to provide mechanical services on the projects.

On September 29, 1986, Farrell filed this lawsuit against Jefferson Parish and Burk, its jurisdictional basis being diversity of citizenship. Farrell claimed that the defendants prepared defective and inadequate drawings, plans, and specifications upon which Farrell relied in performing its obligations under the construction contract. These defective submissions allegedly "substantially impeded the progress" of the project and "caused Farrell to substantially change its planned sequence of construction of both projects." (Complaint ¶ 13). The defendants also allegedly required Farrell to perform work beyond that called for in its contracts and unreasonably delayed approval of shop drawings and other documents submitted by Farrell. Jefferson Parish allegedly further breached its contract by failing to timely provide to Farrell equipment called for by the contracts and by failing to pay Farrell for its services upon completion of the contract. In addition to the injuries allegedly suffered directly by Farrell, Farrell claims that Babst, the mechanical subcontractor, was required by the defendants' acts to perform substantial additional work for which it has claimed additional compensation from Farrell. Therefore, Farrell seeks "to recover additional compensation for the account of Babst." (Complaint ¶ 38).

It is undisputed that Farrell is not pursuing claims ex contractu against Burk, as there is no privity between Farrell and Burk. Instead, "Farrell asserts only tort claims against Burk." (Farrell's Memo in Opposition, p. 3). Burk now contends that

(1) Burk owed no duty of care to Farrell under ordinary principles of Louisiana law, (2) any duty Burk might have otherwise owed to Farrell was negated by an exculpatory provision contained in the contract between Farrell and Jefferson Parish, (3) Farrell's claims have prescribed, and (4) Farrell may not recover for the additional expenses and work of Babst.

## DUTY OF ENGINEER/ARCHITECT TO PERSONS NOT IN PRIVITY

 Burk argues that *C.H. Leavell & Co. v. Glantz Contracting Corp. of La., Inc.*, 322 F.Supp. 779 (E.D.La.1971), entirely disposes of Farrell's claims. In *Leavell*, id. at 781, a general contractor on a construction project sued the architects who prepared the plans for the project, alleging that the architects' actions produced unreasonable delays in the completion of the project. The Court framed the issues as follows: "whether a contract between a building owner and its architect constitutes a stipulation pour autrui in favor of the contractor engaged to construct the building, and whether the architect is impliedly a party to the owner's agreement with the construction contractor." Id.

The Court found no privity between the contractor and the architects and determined that there was no stipulation pour autrui (or third party beneficiary contract) in favor of the contractor. The Court granted a partial summary judgment in favor of the architects, but stated that "*Leavell* has asserted other claims in tort. For reasons orally assigned, the motion is denied as to such claims." *Id.* at 784.

This Court does not read *Leavell* to prohibit claims ex delicto such as those of Farrell in the present case. Rather, *Leavell* addresses only contractual claims and, as noted above, expressly excludes from its consideration any tort-based claims. Moreover, caselaw from Louisiana and many other jurisdictions recognizes the existence of a duty of care owed by an architect to persons with whom the architect does not have privity.

In *Gurtler, Hebert & Co. v. Weyland Machine Shop, Inc.*, 405 So.2d 660, 662 (La.App. 4th Cir.1981), the issue was

whether a subcontractor made defendant in a suit by the contractor for breach of contract can assert in a third party demahnd a cause of action in tort against the architect where no privity of contract exists between the architect and his subcontractor.

The Court concluded that privity was not essential to the tort claim and found the existence of an independent duty owed by the architect to the subcontractor. *Gurtler, Hebert & Co.*, 405 So.2d at 662.

In *Milton J. Womack, Inc. v. State House of Representatives*, 509 So.2d 62 (La.App. 1st Cir.), *writ denied*, 513 So.2d 1211 (La. 1987), the Court held that the contractor on a project to renovate the state capitol building could recover in tort for economic injuries from the architectural firm which negligently prepared defective plans. In discussing the standard of care to be applied to the defendant, the Court stated that

The duty of an architect is to exercise the degree of skill ordinarily employed, under similar circumstances, by members of his profession in good standing and to use reasonable care and diligence, along with his best judgment, in the application of his skill.... The architect's duty is not to provide perfect plans but to exercise the degree of professional care and skill customarily employed by other architects in the same general area.

Id. at 64.

Because there is ample authority to support Farrell's claim under Louisiana principles of tort law, Burk's first argument be rejected. See also *American Fidelity Fire Insurance Co. v. Pavia–Byrne Engineering*, 393 So.2d 830, 837 (La.App. 2d Cir. 1981) (liability of architect to surety); see generally Annot., 63 A.L.R.3d 249 (compilation of cases from various jurisdictions).

## EXCULPATORY PROVISIONS IN JEFFERSON PARISH/FARRELL CONTRACT

Burk's second argument is based upon Article 9.11 of the contract between Jeffer-

son Parish and Farrell, which provides as follows:

Neither ENGINEER'S authority to act under this Article 9 or elsewhere in the Contract Documents nor any decision made by ENGINEER in good faith either to exercise or not exercise such authority shall give rise to any duty or responsibility of ENGINEER to CONTRACTOR or any Subcontractor, any manufacturer, fabricator, supplier or distributor, or any of their agents or employees or any other person performing any of the work.

Article 1 of the contract defines "Contract Documents" as follows:

The Agreement, Addenda (which pertain to the Contract Documents), CONTRACTOR's Bid (including documentation accompanying the Bid and any post-Bid documentation submitted prior to the Notice of Award) when attached as an exhibit to the Agreement, the Bonds, these General Conditions, the Supplementary Conditions, the Specifications, the Drawings as same are more specifically identified in the Agreement, together with all Modifications issued after the execution of the Agreement.

"Drawings" are defined to include the following:

The drawings which show the character and scope of the Work to be performed and which have been prepared or approved by ENGINEER and are referred to in the Contact Documents.

Finally, Article 1 defines "Specifications" as follows:

Those portions of the Contract Documents consisting of written technical descriptions of materials, equipment, construction systems, standards and workmanship as applied to the Work and certain administrative details applicable thereto.

Burk contends that the contractual provisions cited above relieve Burk of any duty, whether contractual or tort-based, to Farrell. Farrell argues that Article 9.11 limits only Burk's contractual duties.

▪ A party to a contract can, where it is not expressly prohibited, renounce what the law has established in his favor. *Parrino v. Royal Ins. Co. of America,* 484 So.2d 282, 288 (La.App. 3d Cir.1986). See also La.Civ. Code Art. 7, Comment (c) (ability to contract away rights is "a self-evident proposition"). An exculpatory clause in a contract may relieve a person of liability for his own negligence if such an intention is clearly expressed. "As long as one's negligence does not cause physical injury to another, contractual provisions are valid to eliminate completely or to partially limit liability for losses due to negligence, but not for losses caused by intentional acts or gross fault." *Banner Chevrolet v. Wells Fargo Guard Services,* 508 So.2d 966, 967 (La.App. 4th Cir.1987).

In *Battig v. Hartford Accident & Indemnity Co.,* 482 F.Supp. 338, 339 (W.D.La. 1977), *aff'd,* 608 F.2d 119 (5th Cir.1979), the court considered whether a release provision contained in a contract between a school and the parents of a student relieved the school from liability for failure to provide medical care to the student. The contract provided that the defendant was "released from any and all liability of every nature, kind and description as a result of any injuries, hurt or damage sustained by the child herein described." *Id.* at 343. The contract also contained a clause requiring the parents to indemnify the defendants "from any loss or claim of any kind which may be made against them." *Id.*

The parents' tort claim had prescribed, so the Court only considered the release and indemnity provisions in the context of their claim for quasi-contractual relief. The Court stated the following rule:

Louisiana does not require a specific reference to negligent acts in order to cover claims based on negligent acts. However, the intention of the parties, as inferred from the language of their agreement, must clearly indicate an intention to include negligent acts within the indemnity agreement or the release.

*Id.*

The Court found that the broad language contained in the contract excluded the defendants' liability for any tort-based or con-

tractual claims, including "alleged negligent breach of quasi-contract." *Id.* at 344.

The Court in *Rhodes v. Congregation of St. Francis*, 476 So.2d 461, 462 (La.App. 1st Cir.1985), held a much more narrowly-drawn clause to preclude tort claims. The plaintiffs had purchased from the defendant an easement for burial in a certain crypt located in the defendant's cemetary. When the plaintiffs' close relative died, another body was mistakenly interred in the crypt reserved for the relative. The defendant offered to bury the body of the plaintiffs' relative in an alternative, more expensive crypt located in another part of the cemetary. The plaintiffs accepted the offer. *Id.*

Later, however, the plaintiffs sued the defendant, seeking damages for emotional and psychological trauma allegedly caused by the defendant's negligence. The defendant raised as a defense a clause incorporated by reference into the conveyance which reserved to the defendant the right, in the event of an error, to either provide a substitute crypt or a refund of the money paid. *Id.* at 463. Although the provision did not specifically refer to negligence, the court found that it abolished the plaintiffs' right to sue for damages and limited their remedy to those stated in the clause.

In the present case, Article 9.11 does not mention the word "negligence." In addition, the situation here is different from most cases in that Burk, in whose favor the article was drafted, was not a party and has not been shown to have been involved in the drafting of the contract between Jefferson Parish and Farrell. It is clear, however, that the alleged negligent acts committed by Burk after commencement of construction were done pursuant to Burk's authority under the "Contract Documents." Therefore, Farrell's claims that Burk negligently delayed approval of shop drawings and change orders, and that Burk caused disruptions and additional work, fall within the proscription of the exculpatory clause contained in Article 9.11 of the contract. Because the Court finds that Article 9.11 precludes tort liability on behalf of Burk for acts and omissions which took place during the course of construction, all of Farrell's claims against Burk except those related to preparation of plans and specifications prior to construction are barred by the exculpatory clause.

Farrell's claims for pre-construction negligence, however, are different from the others. Article 9.11 exempts Burk from liability only for decisions made under its authority prescribed by Article 9 or elsewhere in the "Contract Documents." At the time Burk prepared the plans and specifications upon which Farrell later based its bid, there was no contract in existence between Farrell and Jefferson Parish. Consequently, Burk could not have been exercising its authority under any provision of the contract. Although the drawings and specifications prepared by Burk clearly come within the definition in Article 1 of "Contract Documents", it would be nonsense to suggest that Burk was acting "under authority" granted by the plans and specifications.

## PRESCRIPTION

Burk's next contention is that any claims of Farrell are now prescribed. Burk points out that certain Farrell personnel have admitted in deposition testimony that they were aware shortly after the plans and drawings were submitted that they were deficient. Despite this knowledge at the inception of construction, Farrell did not file suit until after construction had been completed, well over one year since Farrell learned of the alleged deficiencies.

Farrell argues that prescription could not have commenced to run until Farrell could determine whether the deficiencies had actually produced delays and compensable damages. Farrell relies upon La.Civ.Code art. 3492, which provides that the one-year prescriptive period applicable to delictual actions "commences to run from the day injury or damage is sustained." Farrell also cites *Rayne State Bank & Trust v. National Union Fire Ins.*, 483 So.2d 987, 995 (La. 1986). In *Rayne*, the plaintiff, a bank which held two mortgages drafted by the defendant attorneys, received notice in March 1980 of possibly fatal defects in the

mortgages. The debtors defaulted on their mortgages, and the bank instituted foreclosure proceedings. In January 1981, the debtors filed a bankruptcy petition and filed adversary proceedings against the bank to invalidate the mortgages. On April 28, 1981, the bank filed a third party complaint against the attorneys who drafted the mortgages. The bank ultimately compromised with the debtors and pursued its malpractice claim against the attorneys. The trial court found that the third party claim was barred by prescription because it had not been filed until over a year after the bank received notice of the defects in the mortgages. *Id.* at 988–91.

The Louisiana Supreme Court disagreed with the trial court and reasoned as follows:

> In Louisiana prescription does not begin to run until damage is sustained.... Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of action—both a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. Thus, until damage was "sustained" by the bank, it had no cause of action, and prescription did not commence to run on the date the bank received notice of possibly fatal defects in the mortgages.

*Id.* at 995. (Citations omitted).

Farrell contends that it had no way of determining whether it had been damaged until after the project had been completed, since the injuries of which Farrell complains were delays beyond the previously-scheduled completion date. Farrell also argues that requiring a contractor to file a lawsuit within one year after learning of defective work by other parties (but before it can be ascertained whether damages have been sustained) would be impractical and not conducive to good relations between parties to the construction during the pendency of the project.

Finally, Farrell claims that Burk's failure to mitigate or cure the effects of its allegedly defective work constituted a continuing tort, and therefore, prescription did not commence until after completion of the projects. See *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La.1982) ("Where the cause of the injury is a continuous one given to successive damages, prescription dates from the cessation of the wrongful conduct causing damage.").

 This Court agrees with Farrell on its first point and finds that prescription did not commence until Farrell incurred some degree of calculable damages. Since Farrell could not fully ascertain the nature and extent of its damages until at least sometime near the completion of construction, the evidence before the Court is insufficient to support a summary judgment on the issue of prescription.

Therefore, IT IS ORDERED that the motion of Burk for summary judgment is DENIED insofar as it is based on prescription.

## FARRELL'S CLAIMS ON BEHALF OF ITS SUBCONTRACTOR

In its final contention, Burk argues that all of Farrell's claims for additional work performed by Babst should be dismissed. Babst has not sued Farrell, but has only made a written demand upon Farrell, which has not paid the demand. Fed.R.Civ.P. 17(a) provides, in pertinent part, that "Every action shall be prosecuted in the name of the real party in interest." The Fifth Circuit in *New Orleans Public Service v. United Gas Pipe Line*, 732 F.2d 452, 464 (5th Cir.) *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), that "[t]he 'real party in interest' is the party who, by substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." Therefore, it is necessary to determine whether Louisiana law grants Farrell the right to sue for Babst's damages. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 257, *reh'g denied*, 634 F.2d 1355 (5th Cir.1980).

When Burk filed the instant motion, the Court inquired whether Babst had made any assignment to Farrell of Babst's claims arising out of the construction project. Counsel for Farrell produced a copy of a document entitled "Agreement", which the parties have in the course of these proceedings referred to as an "assignment." The preamble to the agreement declares that the Farrell and Babst have come to an understanding that "it will be mutually beneficial for Farrell to make one consolidated action against Jefferson Parish, Louisiana on behalf of Farrell and Babst." The agreement is silent as to any potential claims Babst may have against Burk.

The "agreement" states that Farrell has retained Phil B. Abernethy, an attorney from the Jackson, Mississippi law firm of Butler, Snow, O'Mara, Stevens & Cannada to represent its interests in this litigation. Babst has retained Laurence D. Rudman, an attorney from New Orleans, Louisiana, to pursue its claims. The document further provides as follows:

Babst's attorneys will enter an appearance in any litigation resulting from the claims of Farrell and Babst against Jefferson Parish, Louisiana as an attorney for Farrell. However, as between the parties to this agreement, it is expressly understood and agreed that the attorneys designated by the parties in this agreement shall be the attorneys for each of said parties should any conflict of interest appear.

Under the terms of the agreement, Farrell and Babst are separately responsible for payment of the fees of their respective attorneys. Costs are to be shared in the proportion that which each party's claim bears to the total damage claim brought against the parish in the name of Farrell. Any recovery is to be divided in a like manner, and Farrell is required to pay over to Babst its share of any moneys received within seven days after receipt. Babst retains the right to approve any settlement, although its approval may not unreasonably be withheld.

The "agreement" is clearly not a valid assignment of a litigious right because Babst has not transferred title of its rights to Farrell. La.Civ.Code art. 2642. Moreover, because the agreement does not purport to authorize Farrell to pursue claims against Burk, the Court will disregard the document in considering the claims against Burk.

Farrell also argues that general principles of the law of public contracts permit a general contractor to litigate on behalf of its subcontractors even when the general contractor has not received a valid assignment from its subcontractor. In *United States v. Blair*, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944), the United States Supreme Court permitted the general contractor on a project sponsored by the United States to sue the United States on behalf of a subcontractor who had no privity with the government. The Court reasoned as follows:

Clearly the subcontractor could not recover this claim in a suit against the United States, for there was no express or implied contract between him and the Government. But it does not follow that (the general contractor) is barred from suing for this amount. (The general contractor) was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price ... whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of (the general contractor) under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. (The general contractor's) contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract.

*Id.* at 737–38, 64 S.Ct. at 824 (citations omitted).

In holding that the subcontractor had no express or implied contract with the government, the Court in Blair cited to *Merritt v. United States*, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 (1925), in which the

Court stated that, "[t]he Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law."

Since Blair, a number of courts in various contexts have that a general contractor may sue a project owner on behalf of a subcontractor who has no privity with the owner. See *Havens Steel Co. v. Randolph Engineering Co.*, 613 F.Supp. 514, 540 (W.D.Mo.1985), *aff'd*, 813 F.2d 186 (8th Cir. 1987); *Public Health Trust of Dade County v. M.R. Harrison Const.*, 454 So.2d 659, 659 (Fla.Dist.Ct.App.1984); *County Comm'rs v. Cam Const.*, 300 Md. 643, 480 A.2d 795, 797 (1984); *Tully & DiNapoli, Inc. v. State*, 51 Misc.2d 11, 272 N.Y.S.2d 667, 671 (N.Y.Ct.Cl.1966); *D.A. Parrish & Sons v. County Sanitation Dist. No. 4*, 174 Cal.App.2d 406, 344 P.2d 883, 888 (1959); *St. Paul Dredging Co. v. State*, 259 Minn. 398, 107 N.W.2d 717, 725 (1961).

> Another court explained Blair as follows: The holdings ... recognize that a direct claim by a subcontractor against a contractee is barred by concepts of privity (as well as contractual provisions prohibiting suit), and that if the contractor himself is barred from asserting those claims, the contractee would be in the extraordinary position of being responsible to no one regardless of the nature or extent of its liabilities under the contract.

*Buckley & Co. v. State*, 140 N.J.Super. 289, 356 A.2d 56, 73 (App.Div.1975).

■ The right of the general contractor to sue on behalf of its subcontractor is not absolute. In *Wexler Const. Co. v. Housing Authority of Norwich*, 149 Conn. 602, 183 A.2d 262, 264–65 (1962), the Court explained St. Paul Dredging and Blair as follows:

> The apparent basis of those decisions was that under the particular facts the subcontractor would not have been able to recover in an action brought by himself against the government so that unless a suit were maintainable by the principal contractor on behalf of the subcontractor the latter would be remediless. It was therefore held that in the absence of express provisions in the subcontract negating liability of the contractor to the subcontractor for extra work, recovery could be had by and in the name of the principal contractor on behalf of the subcontractor. Such considerations of policy are inapplicable here, since no reason appears why (the subcontractor) itself would have any difficulty in recovering for extra work performed by it outside the contract on the theory of an implied contract.

Based upon the foregoing analysis, the court in *Wexler Const. Co.*, *id.* 183 A.2d at 265, held that a general contractor could not recover from the owner for injuries suffered by its subcontractor in the absence of a showing that the general contractor was liable to the subcontractor. Because "[a] contractor is not necessarily, nor even generally liable to its subcontractor for the extra work done by the subcontractor by reason of fault on the part of the owner or its agents," *id.* at 264, the court reversed a judgment against the owner and in favor of a general contractor on behalf of its subcontractor.

"It is not enough in an action by the prime contractor that the contractor proves that a subcontractor who is not a party to the suit and was not a party to the prime contract may or does have a cause of action against the other party to the prime contract." *Walter Kidde Constructors, Inc. v. State*, 37 Conn.Supp. 50, 434 A.2d 962, 971 (1981). " 'A plaintiff can recover only by proving that he himself is entitled to prevail on the cause of action alleged. It is not enough that he prove that some or other person, not a party to the case, would be entitled to recover on that cause of action.' " *Id.* (Quoting *Wexler Const.*, 183 A.2d at 264).

Without deciding whether the rule stated in Blair applies to this suit for damages under Louisiana law, the Court notes that the rule in Blair which permits the general contractor to sue on behalf of its subcontractor is based upon the general contrac-

tor's express contract with the government.

Insofar as the potential liability of Burk is concerned, Babst stands in exactly the same position as Farrell. Neither Farrell nor Babst has privity with Burk. The only difference between Farrell and Babst for these purposes is that Babst could not sue Burk or the parish in federal court because Babst, Burk, and the parish are all domiciled in the state of Louisiana. It is clear that the rule in Blair would not apply to the claims against Burk, since there is no impediment to a delictual action by Babst against Burk in state court. Furthermore, the "agreement" earlier referred to deals only with potential claims against Jefferson Parish, and does not purport to address claims by either party against Burk. Accordingly, IT IS ORDERED that the motion of Burk for summary judgment is GRANTED insofar as it seeks the dismissal of Farrell against Burk on behalf of Babst.