**NICOLLS POINTING COULSON, LTD.**

v.

**TRANSPORTATION UNDERWRITERS OF LOUISIANA, INC.**

Civ. A. No. 90–2951.

United States District Court,
E.D. Louisiana.

Oct. 31, 1991.

John A. Bolles, David B. Lawton and Gary Alan Hemphill, Terriberry, Carroll & Yancey, New Orleans, La., for Nicolls Pointing Coulson, Ltd.

Michael H. Bagot, Jr., Wagner & Bagot, New Orleans, La., for Transp. Underwriters of Louisiana, Inc.

Michael E. Wanek, Hulse, Nelson & Wanek, New Orleans, La., for Lloyd's Underwriters, Guardian Royal Exchange Assur. Ltd., Norwich Union Fire Ins. Soc. Ltd. and CNA Reinsurance of London Ltd., third-party defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is defendant's motion to reconsider the Court's Order dismissing the RICO counterclaims, specifically those defendant asserts as assignee of its customer Harris Well Service. For the reasons that follow, defendant's motion is DENIED.

### I.

The underlying dispute in this case is between two insurance intermediaries who are feuding over premiums owed. The Court is now mediating yet another round in the resulting paper war. The facts are painfully well-known to everyone concerned.

The dispute in this case concerns policies that date back to 1988. Plaintiff claims that defendant has collected premiums from a number of assureds for whom plaintiff secured policies, but never passed on the premiums to plaintiff.

In turn, in its counterclaim, defendant alleged that: (1) NPC made misrepresentations of fact to TUL that caused it to obtain coverages for its customers through NPC that in reality were unacceptable to both TUL and its customers; (2) NPC accepted premiums TUL paid to NPC on behalf of TUL's customers, and then failed to secure the promised insurance coverage for TUL's customers; and (3) both TUL and its customers were damaged because of their reliance on NPC's misrepresentations.

Among other things, defendant claimed that NPC's misrepresentations entitled it to recover treble damages under RICO. TUL's theory was that it could recover under RICO both for damages to itself in the form of lost business and reputation, and for damages to its customers from the alleged failure of NPC to obtain acceptable insurance coverage.

The Court granted plaintiff's motion to dismiss the RICO counterclaims on the ground that defendant lacked standing to pursue its claims. Defendant then moved the Court to reconsider [1] its Order dismissing these counterclaims on several grounds. The Court rejected all contentions but one. Defendant maintains in its motion that it is entitled to pursue in its own name any RICO claims possessed by its customer Harris Well Service, because Harris assigned to TUL all its claims against NPC regarding coverages and premiums.

The Court delayed ruling on defendant's motion to reconsider its dismissal of the RICO claims defendant can allegedly assert as Harris' assignee pending further briefing on the following three issues:

1. Are RICO claims assignable, and if they are what are the requirements of a valid assignment?

2. Has Harris Well Service validly assigned any RICO claims it may have to Transportation Underwriters of Louisiana, Inc.?

3. What RICO claims did Harris Well Service possess which it assigned?

It is these issues that are now before the Court.

### II.

#### A.

Although the Fifth Circuit has not discussed the issue, district courts in other

---

1. Although defendant styled this motion a "Motion to Reconsider," what defendant is actually requesting is relief from a final order of the Court under Federal Rule of Civil Procedure 60(b). Rule 60(b) provides that a "court may relieve a party ... from a final judgment, order, or proceeding for the following reasons ... (6) any other reason justifying relief from the operation of the judgment." The vehicle of a motion to reconsider simply does not exist in this context. *See Lavespere v. Niagara Machine and Tool Works, Inc.,* 910 F.2d 167, 173 (5 Cir.1990).

circuits have uniformly held that RICO treble damages claims are assignable. *See Federal Insurance Company v. Parello,* 767 F.Supp. 157, 163 (N.D.Ill.1991); *Federal Insurance Company v. Ayers,* 760 F.Supp. 1118, 1120 (E.D.Pa.1990); *In re National Mortgage Equity Corporation Mortgage Pool Certificates Securities Litigation,* 636 F.Supp. 1138, 1151–56 (C.D.Cal.1986); *see also Lopez v. Richards,* 594 F.Supp. 488, 493 (S.D.Miss.1984) (discussing whether a particular purported assignment of a RICO claim was effective without addressing the threshold question of whether RICO claims are assignable at all).

The courts that have explored the issue, and have concluded that RICO claims are assignable, have analogized RICO's treble damages provision to Section 4 of the Clayton Act, which authorizes treble damages for victims of antitrust violations. *See Parello, supra* at 163; *National Mortgage Equity, supra* at 1152–56. [2]

*National Mortgage Equity* is the most celebrated case regarding the assignability of RICO claims; it is the only reported decision that provides extensive (and thoughtful) analysis of the issue. In that case, the central contention of the one opposing the assignment of the RICO claim was that RICO's treble damages provision is penal in nature, and penal damages claims are generally non-assignable. *Id.* at 1153. The argument focuses on a three step analysis: (1) The RICO treble damages provision is penal; (2) an action for penalties does not survive the death of a defendant; and (3) traditionally, actions that are not survivable are not assignable. *Id.*

However, the court rejected this argument. The court held that antitrust treble damages cannot be readily characterized as exclusively remedial or penal, and noted that even courts that have held that the Clayton Act's damages provision is penal have nearly universally agreed that antitrust treble damages claims can be assigned. *Id.* at 1154–55. Therefore, the court said that whether RICO treble damages are punitive or remedial simply is not determinative of the question whether RICO claims are assignable. *Id.* at 1155.

Next, the court held that the precise nature of RICO's treble damages provision is equally unclear to that of the Clayton Act. However, by drawing on the analogy regarding antitrust treble damages claims, the court held that RICO claims are assignable whether or not they are in fact penal. *Id.* at 1155–56. [3]

This Court agrees with *National Mortgage Equity.* It seems rather unsound to say, given the language and legislative history of the two statutes, that antitrust treble damages claims are assignable but RICO treble damages claims are not.

That the Fifth Circuit has held that RICO treble damages are penal in nature [4] does not alter the conclusion that RICO claims are assignable. The Fifth Circuit has also concluded that antitrust treble damages are punitive, so that nothing beyond actual damages survives the death of a defendant. *See Rogers v. Douglas Tobacco Board of Trade,* 244 F.2d 471, 483 (5 Cir.1957). But it is well settled in this Circuit that antitrust claims are nevertheless assignable. *See Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 603–04, n. 3 (5 Cir.) *cert. dismissed,* 458 U.S. 1122,

---

**2.** In addition to the fact that both statutes authorize treble damages, the RICO-antitrust law analogy is particularly appropriate for at least two reasons. First, it appears that the RICO damages provision is modeled after the almost identical language of Section 4 of the Clayton Act. *See National Mortgage Equity, supra* at 1152. Second, RICO was originally proposed as an amendment to the Sherman Act, and the legislative history suggests that RICO addresses concerns similar to those at which the antitrust law is directed. *Id.* at 1155–56, n. 24.

**3.** The *Parello* court specifically adopted the reasoning of *National Mortgage Equity,* and concluded that "[t]here is little room to argue that Congress would intend to allow the assignment of antitrust claims and would prohibit the assignment of RICO claims." *Parello, supra* at 163.

**4.** *See Abell v. Potomac Insurance Company,* 858 F.2d 1104, 1141, *rehearing en banc denied,* 863 F.2d 882 (5 Cir.1988), *vacated on other grounds, Fryar v. Abell,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989).

103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); *Jefferson County Pharmaceutical Association, Inc. v. Abbott Laboratories*, 656 F.2d 92, 98 (5 Cir.1981), *rev'd on other grounds*, 460 U.S. 150, 103 S.Ct. 1011, 74 L.Ed.2d 882, *reh'g denied*, 460 U.S. 1105, 103 S.Ct. 1808, 76 L.Ed.2d 371 (1983); *Kershaw v. Kershaw Manufacturing Co.*, 209 F.Supp. 447 (M.D.Ala.1962), *aff'd*, 327 F.2d 1002 (5 Cir.1964).[5]

Thus, the Fifth Circuit has indicated that it perceives no inconsistency in saying on the one hand that antitrust treble damages are penal rather than remedial in nature, and on the other hand that antitrust claims are assignable.

### B.

The next question is whether Harris validly assigned to TUL any RICO claims it might have.

■■■ Initially, the Court rejects defendant's contention that under Louisiana law plaintiff cannot challenge the validity of the purported assignment. It is true that a debtor cannot challenge an assignment of a debt by a creditor unless he can show he is prejudiced by the assignment. *See Keith v. Comco Insurance Co.*, 574 So.2d 1270, 1276 (La.App. 2 Cir.) *cert. denied*, 577 So.2d 16 (1991); *Zurich Insurance Co. v. Grain Dealers Mutual Insurance Co.*, 169 So.2d 6, 9 (La.App. 2 Cir.1964). However, in this case, plaintiff has alleged substantial prejudice from the assignment. First, the agreement was not executed until after plaintiff had filed its motion to dismiss defendant's RICO counterclaims, over one year into the life of this bloated litigation. Plaintiff has not directed previous discovery efforts at Harris, because it was not presented with a claim by Harris, or on its behalf. Further, the presence of Harris' claims in the present case would bring into the case for the first time new theories of liability and damages.

To require plaintiff to defend against the Harris counterclaims at this late date (less than two months to trial) would prejudice plaintiff by requiring it either to engage in hurried discovery efforts and motion practice (which could both be expensive and significantly detract from its ability to adequately defend against the claims), or to seek a continuance of the trial.

These potentially prejudicial circumstances lead the Court to reject defendant's claim that the validity of the assignment is not in issue, and proceed to discuss the merits of plaintiff's arguments. *Cf. Farrell Construction Co. v. Jefferson Parish*, 693 F.Supp. 490, 496 (E.D.La.1988) (reaching the merits of a challenge to an assignment's validity without discussing prejudice to the challenging party).

■■■ There is no federal law of assignments, and the Fifth Circuit has held that the validity of a particular assignment of a federal cause of action is governed by the state law that the appropriate conflict of laws principles dictate should control the contract. *See Martin, supra* 665 F.2d at 604–05 (Louisiana champerty law governed whether antitrust claim was validly assigned.). Here, because the parties do not dispute that Louisiana law governs the issue of the validity of the purported assignment in this case, the Court will apply Louisiana law without entering the thicket of the choice of law inquiry.

In Louisiana, the validity of an assignment of a litigious right is governed by Louisiana Civil Code Article 2642, *et seq. See Farrell, supra* at 496. Particularly important here is Article 2642, which provides that "[i]n the transfer of credits, rights or claims to a third person, the delivery takes place between the transferrer and the transferee by the *giving of the title.*" (emphasis supplied).

"Title" to a right is the equivalent of complete ownership of the right, and under Louisiana law a party with perfect ownership of a thing is one with the right to use, enjoy and dispose of the thing as he sees fit. *See* La.Civ.Code art. 477; *Bagur v. Commissioner of Internal Revenue*, 603 F.2d 491, 499 (5 Cir.1979). In other words, the owner of property has "direct, immedi-

---

5. However, none of the cases recognizing that antitrust claims are assignable discuss the issue whether antitrust treble damages are punitive or remedial, nor do they discuss *Rogers*.

ate, and exclusive authority over [it]." La. Civ.Code art. 477.

Plaintiff argues correctly that in this purported assignment, Harris did not transfer to TUL *exclusive* authority to use, enjoy and dispose of Harris' RICO cause of action and possible recovery. It is true that in the "assignment," Harris states that it assigns to TUL "all right, *title*, interest claims (sic) of Harris to proceed against NPC...." (emphasis supplied). However, this provision seemingly transferring to TUL exclusive right and title to the Harris claims against NPC is betrayed by another part of the agreement:

> Harris reserves the right to resolve, dispute or litigate with TUL all issues relating to coverage and return of premia recovered by TUL to the extent that (a) NPC is ordered by these proceedings to pay and does pay same to TUL or (b) TUL's liability to NPC, if any, is offset or reduced by an award returning said premiums to and in favor of TUL. Harris hereby acknowledges and agrees that any other recoveries will be solely for the benefit and use of TUL....

Thus, Harris has retained some of its rights against NPC, including (crucially for purposes of this case) part of its potential RICO claim. Specifically, to the extent that any of defendant's eventual recovery on a RICO claim consists of the return of premiums (as it certainly would),[6] defendant will not have clear title to the recovery. TUL would potentially have to "resolve, dispute or litigate" with Harris over whether it can keep any sum it recovers.

This agreement is similar to the one held ineffective in *Farrell, supra* 693 F.Supp. at 496. In *Farrell* the parties agreed that the transferee would prosecute a lawsuit for its own behalf and on behalf of the transferor. However, the agreement stated that any recovery from the suit would be shared in proportion that each party's claim would bear to the total damage award. Costs would be similarly allocated. The court held that the agreement was not a valid assignment of a litigious right under Article 2642 because the transferrer had not given title to its rights to the transferee. *Id.* Although the transferee had the right to prosecute the suit in its own name, the parties were later obliged to share any recovery obtained.

Similarly, although Harris assigned to TUL the right to prosecute its claims against NPC in TUL's name, Harris reserved the right to later obtain a share of the recovery, as well as the right to litigate the issue if necessary. It seems clear that Harris did not validly assign its claims against NPC (including Harris' RICO cause of action) to TUL because TUL did not receive complete title to the Harris' claims under the terms of the agreement.

Defendant's motion to reconsider the Court's Order dismissing the RICO counterclaims is DENIED, and the Court's Order dismissing the RICO counterclaims for lack of standing is AFFIRMED.[7]

---

6. TUL's central RICO claim on behalf of Harris is that Harris paid premiums through TUL to NPC, and NPC never placed the insurance coverage. RICO provides that a plaintiff can recover treble damages "by reason of a violation of [the statute]." 18 U.S.C. § 1964(c). Clearly, any damages Harris sustained, according to TUL's theory, would include the premiums it paid for coverage that NPC was to place but allegedly did not.

7. Defendant's original motion to reconsider the Court's Order dismissing the RICO counterclaims also asked for leave to amend the Com-

plaint in the event the Court found the pleadings insufficient to state a cause of action. The Court denied leave to amend the claims on which it denied reconsideration (those other than the claims TUL asserts as Harris Well Service's assignee.). Here, there is nothing defendant could do in the way of additional pleading that could remedy the fundamental defect in the assignment. Accordingly, the Court denies defendant leave to amend its Complaint with respect to any RICO claims it asserts on behalf of Harris Well Service.